# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Candyce Bartol,

Civil No. 09-2718 (DWF/JSM)

        Plaintiff,

v.

**MEMORANDUM**
**OPINION AND ORDER**

ACC Capital Holding Corporation
d/b/a Argent Mortgage LLC; Barclay's
Capital Real Estate Inc. d/b/a HomEq
Servicing; and Wells Fargo Bank N.A.
as Trustee of Asset Backed Pass-Through
Certificate Series 2005 WHQ1,

        Defendants.

_____

Carl E. Christensen , Esq., Christensen Law Office, PLLC, counsel for Plaintiff Candyce
Bartol.

Jonathan D. Wilson, Esq., Shari Jerde Aberle, Esq., Dorsey & Whitney LLP, counsel for
ACC Capital Holding Corporation d/b/a Argent Mortgage LLC and Wells Fargo Bank
N.A. as Trustee of Asset Backed Pass-Through Certificate Series 2005 WHQ1.

John G. Westrick, Esq., Westrick & McDowall-Nix, PLLP; and Kristine M. Spiegelberg,
Esq., Shapiro, Nordmeyer & Zielke, LLP, counsel for Barclay's Capital Real Estate Inc.
d/b/a HomEq Servicing.

_____


# INTRODUCTION

     This matter is before the Court on a Motion to Dismiss for Failure to State a Claim

brought by Defendant ACC Capital Holding Corporation d/b/a Argent Mortgage LLC

("Argent").  For the reasons set forth below, the Court grants the motion to dismiss.

## BACKGROUND

Plaintiff Candyce Bartol's home is located on certain real property at 1420 Natchez Avenue South, Golden Valley, Minnesota (the "Property"). On November 29, 2004, Bartol executed a promissory note to her benefit in the amount of $195,000 from Argent. (Am. Compl. ¶ 9.) On the same day, Bartol executed a mortgage in favor of Argent (the "Mortgage"). (Am. Compl. ¶ 10, Ex. 1.) Bartol agreed to pay Argent $195,000, plus interest, in periodic payments. (*Id.*) The Mortgage provides that it could "be sold one or more times without prior notice to [Bartol]." (*Id.* at ¶ 20.) The Mortgage was recorded on February 8, 2005. (Am. Compl. ¶ 10, Ex. 1.)

On December 3, 2004, Argent assigned the Mortgage to Ameriquest Mortgage Company LLC ("Ameriquest") (the "Argent-Ameriquest Assignment"). (Am. Compl. ¶ 11, Ex. 2.) The Argent-Ameriquest Assignment was recorded on January 29, 2007. (*Id.*) The sale and assignment documents were executed by Argent's Assistant Secretaries, Jose Trujillo and Rachel Dinger. (*Id.*) Also on December 3, 2004, Ameriquest assigned the Mortgage to Wells Fargo Bank, N.A. ("Wells Fargo") (the "Ameriquest-Wells Fargo Assignment"). (Am. Compl. ¶ 14, Ex. 3.) The Ameriquest-Wells Fargo Assignment was also executed by Jose Trujillo and Rachel Dinger, as Assistant Secretaries to Ameriquest. (Am. Compl. ¶ 16, Ex. 3.) This assignment was also recorded on January 29, 2007. (*Id.*) On December 4, 2008, Wells Fargo assigned the Mortgage to Wells Fargo Bank, N.A. as Trustee under Pooling and Servicing Agreement dated as of February 1, 2005 Asset Backed Pass-Through Certificates Series 2005 WHQ1 ("Wells Fargo Trustee"). (Am. Compl. ¶ 18 & Ex. 4.)

The Mortgage was recorded on December 24, 2008. (*Id*.) Wells Fargo Trustee appointed Barclay's Capital Real Estate, Inc. d/b/a HomEq Servicing ("HomEq") as the servicer of the Mortgage.

Bartol failed to make payments due under the Mortgage and promissory note. Wells Fargo Trustee initiated foreclosure proceedings on December 22, 2008. (Am. Compl. ¶¶ 21, 22, Exs. 5, 6; Answer and Countercl. of Def. Wells Fargo ¶ 15.) Notice of the foreclosure was published six times from December 24, 2008 to January 28, 2009. (Am. Compl. ¶ 47, Ex. 7.) In addition, Bartol was personally served with the foreclosure documents on January 14, 2009. (*Id*.)

The Hennepin County Sheriff conducted the mortgage foreclosure sale on the Property on February 4, 2009 at 1:00 p.m. (Am. Compl. ¶ 47.) The sale was subject to a six-month redemption period. (*Id*. ¶¶ 47-49.) Wells Fargo Trustee bid $194,209.96 at the sheriff's sale. (Am. Compl. ¶ 48.) Bartol's redemption period ended on August 4, 2009. (Am. Compl. ¶ 49.) Bartol did not seek to redeem the property during the redemption period.

Bartol initiated this action on September 2, 2009. In this action, Bartol alleges that the chain of title for the Mortgage contains severe irregularities and that a break in title makes the foreclosure illegal and void. As against Argent, Bartol asserts claims for declaratory relief, fraud/intentional misrepresentation, negligent misrepresentation, a violation of Minn. Stat. § 325F.69, and a violation of Minn. Stat. § 325D.44. Argent moves to dismiss each of these claims.

**DISCUSSION**

**I.      Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls

for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.    Declaratory Relief

Bartol asserts that the Argent-Ameriquest and Ameriquest-Wells Fargo Assignments are invalid and asks the Court to declare the Bartol foreclosure null and void and to declare Bartol the title holder in fee of the Property.  Argent asserts that Bartol's cause of action for declaratory relief, as asserted against Argent, should be dismissed. Argent contends that while Bartol seeks a declaration that the foreclosure was "null and void," the Amended Complaint does not contain any allegation that Argent was involved in the foreclosure process.  Argent further contends that Bartol's allegation that the Argent-Ameriquest Assignment is invalid is conclusory and unsupported.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.  Therefore, before a declaratory judgment may be entered, there must be an actual controversy that is concrete and definite, touching the legal relations of parties having adverse legal interests.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Here, Bartol has failed to demonstrate an "actual controversy" with Argent to warrant declaratory relief.  Bartol's declaratory relief cause of action centers on her claim

that the foreclosure is null and void. In particular, Bartol asserts that the foreclosure on her home does not comport with Minnesota's foreclosure by advertisement statute. There are no allegations, however, that Argent was involved in the foreclosure process. Instead, it appears from the Amended Complaint that Argent's involvement with the Mortgage ended after it assigned the Mortgage in December 2004. The Court concludes that Bartol has failed to allege an actual controversy with Argent, and therefore Count Two of the Amended Complaint is dismissed as it is asserted against Argent.

### III. Fraud and Intentional Misrepresentation

Bartol alleges in her Amended Complaint that "Defendants Argent Mortgage, HomEq, and Wells Fargo, all represented that they had conveyed or received title to Bartol's home" and that the "representations that they had properly conveyed, received, or held title to Bartol's home were false." (Am. Compl. ¶¶ 83, 84.) Bartol further alleges that "Argent Mortgage, HomEq, and Wells Fargo intended to deceive Bartol and induce her into believing that they had the right and the power to foreclose on her home." (Am. Compl. ¶ 89.)

Common law fraud encompasses intentional misrepresentation. *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999); *Dvorak v. Maring*, 285 N.W.2d 675, 678 n.4 (Minn. 1979). To state a claim for fraud/intentional misrepresentation, Bartol must allege that (1) Argent made a false representation about a past or present material fact that was susceptible of knowledge; (2) Argent knew the representation was false or asserted it as its own knowledge without knowing whether it was true or false; (3) Argent intended to induce Bartol to act and that Bartol was induced

to act; and (4) that Bartol acted in reliance on the representation and was damaged. *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *see also Iverson*, 172 F.3d at 529 ("Under Minnesota law, fraud is properly pled if the complaint alleges the elements of intent, inducement, reliance, and damages."). Moreover, Rule 9(b) provides that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). To be sufficiently particular, Bartol must provide the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Argent asserts that Bartol has failed to adequately plead fraud or intentional misrepresentation.

Bartol does not identify a specific representation made by Argent to Bartol. Instead, Bartol argues in its opposition that the misrepresentation of fact is that Argent represented that it assigned the Mortgage to Ameriquest when in fact it did and could not do so. Bartol suggests that the misrepresentation lies in the fact that: (1) the recordation of the Mortgage occurred more than two months after the date of the Argent-Ameriquest Assignment; (2) the Argent-Ameriquest Assignment was executed by individuals who served as agents of both Argent and Ameriquest; and (3) that it would be contradictory to the terms of the Pooling and Servicing Agreement ("PSA") that governs the Asset-Backed Pass-Through Certificates Series 2005 WHQ1 if the Argent-Ameriquest Assignment occurred on or after February 8, 2005.

First, Bartol concedes that there is nothing in Minnesota law requiring Argent to record a mortgage before assigning it.  (Bartol's Response Mem. in Opp. of Argent's Mot. to Dismiss at 14.)  Instead, Bartol argues that by not recording the Mortgage before assigning it, it may have run afoul statutory requirements of Minnesota's foreclosure by advertisement statute.  There are no allegations, however, that Argent was at all involved in the foreclosure and, thus, Argent could not have violated the foreclosure by advertisement statute.  Therefore, the fact that Argent recorded the Mortgage after it assigned it to Ameriquest does not support Bartol's claim of fraud/intentional misrepresentation.  Second, Bartol argues that the Court should construe the actions of Trujillo and Dinger, who were agents of Argent and Ameriquest, as representations that are not credible.  However, Bartol cites no persuasive legal authority for the proposition that an individual cannot serve as an agent or representative for more than one entity, and asserts no facts to suggest any fraudulent or wrongful activity on the agents' behalves.  Nor does Bartol allege any facts or provide any authority to suggest that Trujillo or Dinger lacked authority to assign the Mortgage on Argent's behalf.  Finally, Bartol argues that the Argent-Ameriquest Assignment would contradict the terms of the PSA *if* the Argent-Ameriquest Assignment occurred on or after February 8, 2005.  The Exhibits attached to the Amended Complaint, however, clearly indicate that the Mortgage was executed on November 29, 2004, and that Argent assigned the Mortgage to Ameriquest on December 3, 2004.  Therefore, there are no facts to support the notion that the Argent-Ameriquest Assignment occurred on or after February 8, 2005.

The Court concludes that Bartol has failed to sufficiently plead a cause of action for fraud/intentional misrepresentation against Argent. Bartol has failed to allege with particularity a representation made by Argent to Bartol that would support a claim for fraud or intentional misrepresentation. In addition, Bartol has failed to sufficiently allege that she acted in reliance upon any such misrepresentation made by Argent or that Argent has caused Bartol damage. Accordingly, the Court grants Argent's motion as to Count Three.

## IV.    Negligent Misrepresentation

Bartol also asserts that Argent's alleged false representations, as discussed above, satisfy the elements of negligent misrepresentation. To plead a claim for negligent misrepresentation, Bartol must allege: (1) that Argent supplied false information in the course of business, profession, or employment, or in any transaction in which it has a pecuniary interest; (2) that Argent owed Bartol a duty of care; (3) that Bartol justifiably relied on the information so as to cause pecuniary loss. *See Bonhiver v. Graff*, 248 N.W.2d 291, 298 (Minn. 1976).

Specifically, Bartol alleges that she suffered damages when Argent, HomEq, and Wells Fargo breached their duties of good faith and fair dealing by availing themselves of the foreclosure by advertisement statute without having the right or power to do so. In her opposition, Bartol argues that Argent had a duty of good faith and fair dealing toward her when recording the security interest to conform with the foreclosure by advertisement statute. In asserting this cause of action against Argent, Bartol asserts that Argent's alleged misrepresentation (as discussed above) is paramount.

Under Minnesota law, causes of action based on fraudulent or negligent misrepresentation require proof that a misrepresentation of fact was made. *Semanko v. Minnesota Mutual Life Ins.*, 168 F. Supp. 2d 997, 1000 (D. Minn. 2000). For the reasons discussed above with respect to Bartol's fraud claim, Bartol has failed to sufficiently allege a misrepresentation made by Argent to Bartol. Since such a representation is the basis for Bartol's negligent misrepresentation claim, this claim also fails. To the extent that Bartol suggests that the Argent-Ameriquest Assignment constitutes a breach that would give rise to a claim for negligent misrepresentation, the Court points out that the Mortgage expressly provides that Argent may sell or assign the Bartol's Mortgage. (Am. Compl. ¶ 10, Ex. 1 at ¶ 20.) Moreover, Bartol's negligent misrepresentation claim focuses on the allegation that the defendants availed themselves of the foreclosure by advertisement statute. Again, there are no facts alleged in the Amended Complaint that demonstrate any involvement by Argent in the foreclosure. Accordingly, the Court dismisses Count Four as it is asserted against Argent.

## V. Minnesota Consumer Protection Statutes

### A. Consumer Fraud Act—Minn. Stat. § 325F.69

In her Amended Complaint, Bartol alleges a violation of Minnesota Consumer Fraud Act ("CFA"). The CFA provides, in relevant part, as follows:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69.  Specifically with respect to Argent, Bartol alleges that:

> [Argent] employed fraud, false pretense, false promise, false
> misrepresentation, misleading statements or deceptive practices with the
> intent that Bartol rely thereon when its purported officers executed an
> assignment of mortgage to Ameriquest and then immediately purported to
> be officers of Ameriquest for the purposes of assigning the subject
> mortgage to Wells Fargo.

(Am. Compl. ¶ 104.)

An individual bringing a claim under the CFA must do so through the Private
Attorney General Statute, Minn. Stat. § 8.31.  *See Behrens v. United Vaccines, Inc., Div.
of Harlan Sprague Dawley, Inc.*, 228 F. Supp. 2d 965, 968 (D. Minn. 2002).  Individuals
bringing a claim through the Private Attorney General Statute must "demonstrate that
their cause of action benefits the public."  *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn.
2000).  Here, Argent contends that Bartol cannot make such a showing and that Bartol's
allegations hinge solely on Argent's alleged fraudulent conduct intended to induce her
reliance.  (*Id.*)  Argent also contends that Bartol only seeks redress for private harm and
that her request for injunctive relief, actual damages, and costs and fees would inure only
to Bartol and not the public as a whole.

Bartol first asserts that the existence of a "public benefit" is a question of fact
more appropriate for the factfinder.  In addition, Bartol concedes that she was involved in
a one-on-one transaction, but she asserts that she is unfairly prejudiced by the *Ly*
definition of "public benefit" and that there is a public benefit in preventing the abuse of
the foreclosure by advertisement process and wrongful foreclosure.

The Court finds that the issue of whether the matter is in the public interest is a question of law, not a question of fact as Plaintiff contends. In *Ly*, the Minnesota Supreme Court held that the successful prosecution of claimant's fraud claim, which involved a "single one-on-one transaction," would not benefit the public. *Id.* at 314. Under *Ly*, which sets forth the prevailing legal standard, Bartol's CFA claim fails, as it similarly involves a one-on-one transaction. The Court further finds that the benefit of generally preventing foreclosure abuse is too remote to satisfy the "public benefit" requirement. Because the alleged misrepresentations were made in a one-on-one transaction and because Bartol has not demonstrated that the prosecution of this claim would benefit the public, the Court grants Argents' motion to dismiss Bartol's CFA claim.

### B. Deceptive Trade Practices Act—Minn. Stat. § 325D.44

Bartol also alleges that Argent violated the Deceptive Trade Practices Act ("DTPA"). The DTPA provides, in relevant part, that:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services . . . or . . . engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325D.44, subd. 1(2) and subd. 1(13). Injunctive relief is the only remedy available under the DTPA: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 324D.45.

Bartol alleges that "Argent engaged in conduct that created a likelihood of confusion or of misunderstanding when its purported officers executed an assignment of mortgage to Ameriquest and then immediately purported to be officers of Ameriquest for the purposes of assigning the subject mortgage to Wells Fargo." (Am. Compl. ¶ 112.) The Court concludes that there is nothing in the Amended Complaint to support a DTPA cause of action against Argent. There are no allegations to suggest that the Argent-Ameriquest assignment was likely to cause confusion or misunderstanding. The Mortgage expressly provided that it may be sold or assigned. Argent assigned the Mortgage on December 3, 2004, and there are no allegations that the terms of the Mortgage changed or that the assignment otherwise impacted Bartol's obligations under the Mortgage. Further, as discussed above, the fact that individuals acted as representatives for both Argent and Ameriquest is not, alone, sufficient to support a claim of fraud or deceptive practices. Accordingly, the Court dismisses Bartol's DTPA as it is asserted against Argent.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      Argent's Motion to Dismiss (Doc. No. 13) is **GRANTED**.

2.      Counts Two, Three, Four, and Five of the Amended Complaint are **DISMISSED WITH PREJUDICE** as they are asserted against Argent.

3.    Argent is **DISMISSED** as a defendant in this action.

Dated:  January 11, 2010                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge